UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


AMERICAN SAFETY INDEMNITY COMPANY,

    Plaintiff


v.                                  CIVIL ACTION NO. 2:04-0752


STOLLINGS TRUCKING CO., INC.,

    Defendant

AND

CLARENDON NATIONAL INSURANCE COMPANY,

    Intervenor Defendant


<u>MEMORANDUM OPINION AND ORDER</u>


      This matter is before the court on the following

motions, all filed on December 23, 2005: defendant Stollings

Trucking Company, Inc.'s ("Stollings") motion for summary

judgment on the Murphy estate claim regarding coverage issues

presented by its counterclaim; Stolling' motion for summary

judgment on the Bartley claim regarding coverage issues presented

by its counterclaim; Stollings' motion for summary judgment on

the Nelson claim regarding coverage issues presented by the

complaint and the counterclaim; plaintiff American Safety

Indemnity Company's ("American Safety") motion for summary judgment (Nelson); and American Safety's motion for summary judgment (Murphy estate, Bartley, Stollings).  Additionally, intervenor defendant Clarendon National Insurance Company ("Clarendon"), in filing its response to plaintiff's motion for summary judgment (Murphy estate, Bartley, Stollings), on January 6, 2006, included its cross-motion for summary judgment on the issue of priority of coverages with respect to the Bartley claims.[1]  This matter is before the court on coverage issues only.

I.

A.   <u>The Summary Judgment Standard</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[1]   Counsel for Clarendon, during a conference with the court conducted February 24, 2006, represented that Clarendon has no claims with respect to Murphy estate.

2

Fed. R. Civ. P. 56(c).  Material facts are those necessary to
establish the elements of a party's cause of action.  <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue
of material fact exists if, in viewing the record and all
reasonable inferences drawn therefrom in a light most favorable
to the non-moving party, a reasonable fact-finder could return a
verdict for the non-movant. Id.  The moving party has the burden
of showing -- "that is, pointing out to the district court --
that there is an absence of evidence to support the nonmoving
party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325
(1986).  If the movant satisfies this burden, then the non-movant
must set forth specific facts as would be admissible in evidence
that demonstrate the existence of a genuine issue of fact for
trial.  Fed. R. Civ. P. 56(c); <u>Id</u>. at 322-23.  A party is
entitled to summary judgment if the record as a whole could not
lead a rational trier of fact to find in favor of the non-moving
party.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

        Conversely, summary judgment is not appropriate if the
evidence is sufficient for a reasonable fact-finder to return a
verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at
248.  Even if there is no dispute as to the evidentiary facts,
summary judgment is also not appropriate where the ultimate

3

factual conclusions to be drawn are in dispute.  Overstreet v.
Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

        In reviewing the evidence, a court must neither resolve
disputed facts or weigh the evidence, Russell v. Microdyne Corp.,
65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of
credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir.
1986).  Rather, the party opposing the motion is entitled to have
his or her version of the facts accepted as true and, moreover,
to have all internal conflicts resolved in his or her favor.
Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.
1979).  Inferences that are "drawn from the underlying facts
. . . must be viewed in the light most favorable to the party
opposing the motion."  United States v. Diebold, Inc., 369 U.S.
654, 655 (1962).


B.    Determination of Insurance Policy Coverage


        The West Virginia Supreme Court of Appeals instructs
that the language of an insurance policy is to be interpreted by
its plain meaning.  "The insurer is bound by the express terms of
its contract of insurance.  When those terms, taken in their
ordinary sense, convey a clear and unambiguous meaning, a court

4

cannot indulge in ferreting out hidden meanings or unexpressed intentions to relieve the insurer of liabilities assumed in the policy." Satterfield v. Erie Ins. Property and Cas., 618 S.E.2d 483, 485-486 (W.Va. 2005).  If the coverage is not intended to apply, the policy should clearly convey that insurance is not available.  "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Satterfield, 618 S.E.2d at 487 quoting syl. pt. 10, Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (W.Va. 1987), overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co., 504 S.E.2d 135 (W.Va. 1998).


II.


American Safety filed, on July 22, 2004, its complaint for declaratory relief, asking the court to determine whether a commercial general liability policy of insurance issued by it to Stollings affords coverage for claims filed against Stollings by Mannie Ray Nelson.  Stollings filed its answer and counterclaim

5

on August 9, 2004, alleging that American Safety breached its
duties to defend and indemnify Stollings with regard to Nelson's
claims, and also in claims filed by Wyson Bartley and Georgia
Murphy.

Clarendon provides or provided a defense to its
insured, Stollings, under a reservation of rights in the Bartley
and Murphy claims.  (Def. Clarendon Mem. in Supp. of Mot. to
Intervene at 1-2.)  It filed its answer and counterclaim for
declaratory relief on December 23, 2004.  Clarendon, the issuer
of a business auto coverage policy to Stollings, would have the
court find that American Safety has the primary duty to defend
and indemnify Stollings in the Bartley matter.  (Clarendon Ans.
and Counterclaim ¶ 4, "wherefore" clause ¶¶ 1-2.)


A.    The American Safety Policy of Insurance

The commercial general liability policy of insurance
issued by American Safety to Stollings was effective from June 9,
2001, through June 9, 2002.  It contained "Coverage A" for
"Bodily Injury and Property Damage Liability," which provided:

> We will pay those sums that the Insured
> becomes legally obligated to pay as damages

6

because of "bodily injury" or "property
damage" to which this insurance applies.  We
will have the right and duty to defend the
insured against any "suit" seeking those
damages.  However, we will have no duty to
defend the insured against any "suit" seeking
damages for "bodily injury" or "property
damage" to which this insurance does not
apply.  We may, at our discretion,
investigate any "occurrence" and settle any
"claim" or "suit" that may result.  But:

(1)   The amount we will pay for damages is
limited as described in SECTION III –
Limits Of Insurance; and

(2)   Our right and duty to defend end at such
time when allegations potentially
covered by the policy are either dropped
or dismissed with prejudice, or when we
have used up the applicable limit of
insurance in the payment of judgments,
in the payment of settlements, or in our
offer to settle or tender to the
potential plaintiff of the applicable
limit of insurance under COVERAGES A or
B, medical expenses under COVERAGE C, or
any other "claim related costs".  Once
the applicable limit of insurance has
been exhausted, we shall not be
obligated to defend or continue to
defend any "claim" or "suit" or pay any
damages, "claim related costs" or
supplementary payments. . . .

(Policy ASIC 98 00 04 00, Sec. I, Coverage A.)  According to the

declarations page of the policy, the general aggregate limit for

the policy during the relevant period was $2,000,000, and the

limit per occurrence was $1,000,000.  The declarations page of

the policy also shows that insurance is available for "products –

7

completed operations" up to the amount of $1,000,000.

During the same time period that the commercial general liability policy was in effect, there also existed a commercial excess liability policy issued by American Safety to Stollings. The insuring agreement provided:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit", which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance and the "underlying insurance" apply.

(Policy ASIC XS 00 01 06 99, Sec. I, Coverage A and B (1)(a).) The insurer's "right and duty to defend and indemnify" under that insurance was "limited solely to damages which are payable under Coverages A or B but which are not payable by the 'underlying insurance' because the 'underlying insurance' has been exhausted by the payment of 'claims' or suits.'" (Policy ASIC XS 00 01 06 99, Sec. I, Coverage A and B (2)(b).)  The general aggregate limit and the per occurrence limit of the excess liability policy was $4,000,000.

B.    **The Nelson Claims**


1.    **Background**


        Mannie Ray Nelson filed an amended complaint in the
Circuit Court of Logan County, West Virginia on May 26, 2004,
styled **Mannie Ray Nelson, Plaintiff, v. Personal (sic; Personnel)**
**Management Company, dba Stollings Trucking Company, Inc.,**
**Defendant**, alleging that he was injured on or about April 30,
2002, while driving a water truck with faulty brakes owned by
Stollings at a time when he, as an employee of Personnel
Management, was performing contract labor for Stollings. (Nelson
Am. Compl. attached as Exh. A to Pl's. Nelson Mem.)  In his
complaint, Nelson stated causes of action for "negligent work
environment" and "intentional exposure to injury."  (Nelson
Compl. Counts II and III.)  The accident occurred on property
belonging to Stollings.  (Def. Stollings Nelson Mem. at 4.)
According to Nelson, Stollings, for which he was working as a
contract laborer leased by Stollings from Personnel Management,
was aware of the defect in its truck prior to the accident in
which he was involved.  (Nelson Am. Compl. ¶ 10.)  American
Safety states, and Nelson's amended state court complaint appears
to acknowledge, that Personnel Management was a "distinct" entity

9

separate and apart from Stollings; and that Personnel Management's safety director described Nelson as a "co-employee" of the two companies.  (Pl's. Nelson Mem. at 2-3.)  The parties seem to agree that Nelson received West Virginia Workers' Compensation benefits for his injury under Stollings' workers' compensation coverage. (Pl's. Nelson Mem. at 3; Def. Stollings' Nelson Mem. at 5.)  The American Safety commercial general liability policy specifically includes a "leased worker" within the definition of "employee."  (Policy, Sec. V, Def. 11 and 18, attached as Exh. D to Pl's. Nelson Mem.)

By letter dated June 30, 2004, American Safety agreed to defend Stollings in Nelson's state court action under a reservation of rights.  (Pl's. Nelson Mem. at 14; Def. Stollings' Nelson Resp. at 2; Def. Stollings' Nelson Mem. at 2.)  It argues here that it has no duty to Stollings in the Nelson matter because the policy excludes coverage for an employee's bodily injury "'arising from and in the course of . . . [e]mployment'" and it seeks the court's declaration stating as much.  (Pl's. Nelson Mem. at 14-15.)  Stollings seeks a continuing defense without reservation.  (Def. Stollings. Nelson Mem. at 7.)

2.   <u>The Employer's Liability Exclusion</u>


Stollings contends that Nelson asserted deliberate intent claims against both it and Personnel Management "in the event he was determined to be employed by Stollings" (Def. Stollings' Nelson Resp. at 2), but that Nelson's counsel "[i]nstead . . . [has] pursued a negligence claim against Stollings as the premises owner of the property where . . . Nelson was injured."  (Def. Stollings' Nelson Resp. at 3.)   Thus, it reasons, where American Safety has defended the Nelson claim as one for negligence and not as a deliberate intent employment claim, American Safety should be estopped from arguing here that Nelson's claim is a deliberate intent action falling outside policy coverage by application of the employer's liability exclusion.  (Def. Stollings' Nelson Resp. at 3, 5.)

Coverage A of the American Safety commercial general liability policy does not apply to bodily injury of "[a]n 'employee' of any insured 'arising from' and in the course of: (a) [e]mployment by any insured; or (b) [p]erforming duties related to the conduct of the insured's business."  (Policy, Sec. I, Cov. A, Excl. 2e(1), "Employer's Liability".)   There is no dispute that Nelson was working as a leased worker – and thus as

11

a defined "employee" under the policy — at the time of his injury.[2]  Furthermore, there is no question that he received workers' compensation benefits as a Stollings worker because of the subject accident.  To be eligible for workers' compensation benefits in West Virginia, an employee must show that he was injured "in the course of and resulting from" his employment.  W.Va. Code § 23-4-1(a) (2005).  It seems apparent that Nelson's injury falls under the employer's liability exclusion of the policy.  Consequently, though Stollings argues that the employer's liability exclusion should not apply, it matters not the manner in which Nelson's state court claim has proceeded.  It matters rather whether Stollings purchased commercial general liability insurance coverage for bodily injury to its employees arising in the course of employment.  Under the terms of the policy, Nelson is such an employee; indeed, Nelson received workers' compensation benefits as a Stollings employee.  Nelson's claims are therefore excluded by Coverage A unless covered by some other provision of the American Safety policy.

---

[2]    As noted _supra_ at page 10, the American Safety commercial general liability policy specifically includes a "leased worker" within the definition of "employee."

3.    <u>The "Auto" Exclusion</u>

Still another exclusion is offered as a bar to
coverage.  American Safety cites Exclusion g, which removes from
coverage claims for injuries or damages "'arising from' the
ownership, maintenance, use or entrustment to others of any
aircraft, 'auto' or watercraft owned or operated by or rented or
loaned to any insured."  The parties dispute whether the truck
operated by Nelson is an "auto" as defined by the policy or,
instead, "mobile equipment", the use of which would be covered.
An auto is "a land motor vehicle, trailer, or semitrailer
designed for travel on public roads, including any attached
machinery or equipment.  But 'auto' does not include 'mobile
equipment'."  (Policy ASIC 98 00 04 00, Sec. V, Def. 4.)

> "Mobile equipment" means any of the following
> types of land vehicles, including any
> attached machinery or equipment:
>
> * * *
>
> b.    Vehicles maintained for use solely on or
>       next to premises you own or rent;
>
> * * *
>
> However, self-propelled vehicles with the
> following types of permanently attached
> equipment are not 'mobile equipment' but will
> be considered 'autos':

      a.   Equipment designed primarily for:

          (1)   Snow removal;

          (2)   Road maintenance, but not
               construction or resurfacing; or

          (3)   Street cleaning . . .

(Policy ASIC 98 00 04 00, Sec. V, Def. 21.)

Nelson testified that the truck he was driving at the time of the accident was not driven on public roads, and he did not possess a commercial driver's license that would have allowed him to operate the truck on public roads.  (Dep. Tr. of Nelson, appended as Exh. 7 to Def. Stollings Mem., at 48.)  The truck was self-propelled, with a tank and sprayer used to minimize dust on Stollings' private mine roads.  (Dep. Tr. of Nelson, appended as Exh. A to Pl. Nelson Resp., at 18-19; Dep. Tr. of Elizabeth Conley, appended as Exh. B to Pl. Nelson Resp. at 49-50.) American Safety represents that it is "undisputed" that the tank and sprayer were permanently attached.  (Pl's. Nelson Reply at 3.)  Stollings does not disagree.  If the attached tank and sprayer is equipment designed primarily for either road maintenance or street cleaning, the truck is not "mobile equipment" under the policy but is instead an "auto" excluded from coverage.

14

Stollings argues that the truck is not an "auto" because (1) it was not designed for street cleaning inasmuch as its mine roads are not streets, and (2) it was not designed for mere road maintenance because its roads were being resurfaced by "replacing the dusty surface with a hard road surface" by the application of water.  (Def. Stollings' Nelson Reply at 6.)  The court declines to accept the fanciful suggestion that the spraying of water on dusty roads constitutes resurfacing. Inasmuch as the water truck was used primarily for road maintenance, it falls under the policy definition of "auto," and Exclusion g applies.

4.   <u>The Contingent Employers' Liability - "Stop Gap" Endorsement</u>

Stollings argues that Nelson's claims against it for negligence and deliberate intent are covered by application of the contingent employers' liability "stop gap" endorsement (Def. Stollings' Nelson Mem. at 5) which provides:

> It is agreed that with respect to any employment by the Named Insured which comes under the Workers' Compensation or Occupational Disease Act of all Monopolistic States, the Company will pay on behalf of the insured those sums in excess of the self-

insured retention[3] which the insured shall
become legally obligated to pay <u>as damages</u>
because of "bodily injury" caused by an
accident or disease, including death at any
time resulting therefrom, sustained in the
United States of America, its territories or
possessions, or Canada by any "employee" of
the Named Insured arising out of and in the
course of his employment . . . (emphasis
supplied)

(Policy, ASIC – ES 98 26 10 99, "Contingent Employers' Liability
– "Stop Gap".)  As discussed above, Nelson was undeniably an
employee of Stollings within the meaning of the policy.  As such,
Stollings argues, Nelson's claim -- apparently referring to the
negligence claim or the deliberate intent claim or both -- is
covered by this provision.  (Def. Stollings' Nelson Mem. at 17-
18.)

        The stop-gap endorsement contains its own exclusions,
including one indicating that coverage does not apply "to any
'claim' brought against any insured or on behalf of any
'employee' for 'bodily injury' or death resulting therefrom:
. . . if benefits therefore (<u>sic</u>; therefor) under any workers'
compensation or occupational disease law are accepted by or on
behalf of such 'employee' . . ."  (Policy, ASIC – ES 98 26 10 99,
"Contingent Employers' Liability – "Stop Gap", Excl. 5(a).)  It

---

        [3]    The term "self-insured retention" here refers to that
which is the equivalent of a deductible of $2,500 per occurrence.

additionally states that the endorsement does not apply to "any obligation for which any insured or any carrier as his insurer may be held liable under any workers' compensation or any occupational disease law . . . "  (Policy, ASIC - ES 98 26 10 99, "Contingent Employers' Liability – "Stop Gap", Excl. 3.) Stollings maintains that because workers' compensation benefits are not available for the claims asserted by Nelson in his state court action for negligence and deliberate intent, and because "Stollings purchased the employers' liability endorsement to protect against the very risk that is presented in the Nelson claim[,]" the stop-gap exclusions do not preclude coverage under the stop-gap endorsement.  (Def. Stollings' Nelson Resp. at 7.)

        The West Virginia Supreme Court of Appeals describes employers' liability insurance coverage policies like this one as a gap filler intended for "'providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law.'"  Erie Insurance Property and Casualty Company v. Stage Show Pizza, JTS, Inc., 553 S.E.2d 257, 262 (W.Va. 2001) quoting Producers Dairy Delivery Co. v. Sentry Ins. Co., 718 P.2d 920, 927 (Calif. 1986).  The state supreme court declined to

apply a workers' compensation exclusion to the Erie stop-gap
endorsement in the <u>Stage Show Pizza</u> case based on its holding
that

> an insurance policy provision excluding
> coverage for "an obligation of an employer
> under any workers' compensation law" means
> that coverage will not be available for an
> obligation that is imposed under a workers'
> compensation act that allows an employee to
> receive fixed benefits, without regard to the
> fault of any party, for a work-related
> injury.

<u>Stage Show Pizza</u>, 553 S.E.2d at 263.

American Safety argues that the <u>Stage Show Pizza</u>
decision was based on the employer's failure to pay workers'
compensation premiums, thereby stripping the employer of the
immunity afforded for negligence actions under the state
compensation act.  Indeed, the <u>Stage Show Pizza</u> employer had lost
its immunity for failure to pay its workers' compensation
premiums.  The court found, first, that

> [a] negligence cause of action against an
> employer by an employee injured in the course
> of and as a result of his employment, that is
> not barred by the immunity provisions of
> W.Va. Code, 23-2-6 because of the employer's
> default on its workers' compensation
> obligations, and against which the employer
> is prevented from asserting certain common
> law defenses by W.Va. Code 23-2-8, is not an
> obligation under a workers' compensation law
> for purposes of interpreting an insurance
> policy.

Stage Show Pizza, 553 S.E.2d at 265.  Second, the court went on

to note that "if an employee [covered by the workers'

compensation law] is able to establish that the employer acted

with conscious, subjective deliberation and intentionally exposed

the employee to a specific unsafe working condition, then the

employer loses its workers' compensation immunity and may be

subjected to a suit for damages as if the Workers' Compensation

Act had not been enacted."  Stage Show Pizza, 553 S.E.2d at 265-

266.  Consequently, Nelson's tort claims, whether for negligence

or deliberate intent, are covered by application of the stop-gap

endorsement.

     By virtue of the stop-gap endorsement, the court denies

American Safety's motion for summary judgment on the Nelson

claim, and grants Stollings' motion for summary judgment on the

Nelson claim.[4]

_____

     [4]   American Safety, in its June 30, 2004, reservation of
rights letter, invokes the following exclusion under "Coverage A
. . . 2. Exclusions."

     This insurance does not apply to:

     a.  Expected or Intended Injury.

     "Bodily injury" or "property damage" expected
     or intended from the standpoint of any insured.
     This exclusion does not apply to
     bodily injury resulting from the use of

19

C.    **The Bartley Claim**

       Wyson Bartley filed his complaint in the Circuit Court
of Boone County, West Virginia, on or about June 24, 2003,
alleging that Stollings, along with an individual defendant,
Ricky Ball, negligently loaded timbers into a truck owned and
driven by Ball, resulting in the "crushing" injury of Bartley
when he attempted to unload the timbers for his employer, A and M
Surveying, Inc., on or about August 8, 2001.  (Bartley Compl.,
attached as Exh. A to Pl. Murphy / Bartley / Stollings Mem., at
¶¶ VIII, XI; Def. Stollings' Bartley Mem. at 2.)  Stollings now
denies having assisted Ball with the loading of the truck, but at
the time of its claim evaluation in August 2003, American
Safety's adjuster assumed that the truck had been loaded by
Stollings.  (Pl. Reply to Def. Clarendon Resp. at 2; Def.
Stollings' Bartley Mem. at 12.)

       Stollings asked American Safety to tender a defense
under its commercial general liability policy and the commercial

---

       reasonable force to protect persons or
       property.

(Policy, ASIC 98 00 04 00, Sec. 1, Coverage A 2 a.)  American
Safety no longer relies on that exclusion.  (Pl. Reply at 4.)

excess liability policy.  By letter dated August 5, 2003,
American Safety declined to provide a defense.  (Def. Stollings'
Bartley Mem. at 6.)  It "asserts that the [commercial general
liability p]olicy might afford coverage for Bartley's claims, but
only excess coverage upon exhaustion of" the Clarendon business
auto policy issued to Stollings.  (Pl. Reply (Murphy, Bartley) at
2.)  The American Safety commercial excess liability policy
contains coverages for bodily injury and personal injury, but
only if the underlying insurance also provides such coverage.
(Policy, ASIC — XS 00 01 06 99, "Commercial Excess Liability
Insurance", Sec. I(1).)

        The only question with respect to coverage of the
Bartley claim, then, appears to be one of priority between the
Clarendon business auto policy and the American Safety commercial
general liability policy, to which the American Safety commercial
excess liability policy is secondary.[5]  Stollings contends that
American Safety's arguments with respect to priority of coverage
are inappropriate because the issue was not raised in its denial
of coverage letter or in its answer to Stollings' counterclaim.

---

        [5]     American Safety has abandoned its argument that
exclusions of the commercial general liability policy serve to
bar coverage.  (Pl. Reply to Clarendon Resp. (Bartley) at 3; Pl.
Reply to Stollings' Resp. (Murphy, Bartley) at 2.)

(Def. Stollings' Reply at 2.)  The court understands this contention is directed to the issue of bad faith, which is not before the court at this juncture, inasmuch as American Safety's failure to earlier raise this issue would have no bearing on the question of whether its policy provided coverage or whether that coverage was primary or secondary to the Clarendon policy.

Clarendon currently provides a defense in the Bartley action under the business auto coverage policy issued by it to Stollings.  (Def. Clarendon Resp. at 3.)  American Safety argues that because the Clarendon policy is primary, and the Clarendon policy and its own commercial general liability policy both are primary to the American Safety excess general liability policy, any duty of defense or indemnity on its part has not arisen. (Pl. Murphy / Bartley / Stollings Mem. at 16.)  The American Safety commercial general liability policy provides:

> If other valid and collectible insurance is available to the insured, our obligations are limited as follows:
>
> a.    This insurance is primary, except when
>       b. below applies.
>
> b.    This insurance is excess over any other
>       insurance that is valid and collectible
>       insurance available to the insured or
>       any Additional Insured whether such
>       insurance is primary, excess, contingent
>       or on any other basis and regardless of
>       the nature, kind, date of issuance or

> limits of such other insurance available
> to the insured or any Additional
> Insured.  We shall have no obligation to
> provide defense or indemnity for any
> "claim" or "suit" for which such other
> insurance exists until such time as the
> limits of such other insurance are
> exhausted by the payment of "claims" or
> "suits".

(Policy, Sec. IV(4), "Other Insurance.") In contrast, the

Clarendon business auto policy states:

> a.   For any covered "auto" you own, this
>      Coverage Form provides primary
>      insurance.  For any covered "auto" you
>      don't own, the insurance provided by the
>      Coverage Form is excess over any other
>      collectible insurance.
>
>                    * * *
>
> d.   When this Coverage Form and any other
>      Coverage Form or policy covers on the
>      same basis, either excess or primary, we
>      will pay only our share.  Our share is
>      the proportion that the Limit of
>      Insurance of our Coverage Form bears to
>      the total of the limits of all the
>      Coverage Forms and policies covering on
>      the same basis.

(Clarendon Policy, Sec. IV(5), "Other Insurance.")  There is no

dispute that the truck that Bartley was unloading at the time of

injury was not owned by Stollings.  Since the covered auto was

not owned by Stollings, the Clarendon policy by its express terms

was simply excess over any other collectible insurance.  Thus,

both the American Safety commercial general liability policy and

the Clarendon business auto policy contemplate application as excess insurance, inasmuch as each policy contains a provision identifying itself as such.

American Safety, relying on authority from the United States District Court for the Eastern District of Virginia, says that because the Clarendon policy contains the <u>pro rata</u> clause, the American Safety policy "containing the excess clause does not provide any coverage until the other policy is exhausted." (Pl. Reply to Def. Clarendon Resp. (Bartley) at 4 <u>citing</u> <u>Early Settlers Ins. Co. v. Selected Risks Ins. Co.</u>, 346 F.Supp. 1272, 1277 (E.D.Va. 1972).) However, the "other insurance" provision in the Clarendon policy contains both an excess insurance clause and a <u>pro rata</u> clause. This is not simply a matter of one policy containing a <u>pro rata</u> clause and the other containing an excess clause, as appears to be the case in <u>Early Settlers</u>, but, rather, it is a case of two policies containing competing excess insurance clauses, one of which says its payout is limited to a <u>pro rata</u> sharing with the other. Only because the two policies are on par with one another as excess policies does the Clarendon <u>pro rata</u> provision become effective. This court has taken the position that competing excess insurance clauses "should be disregarded inasmuch as they are mutually repugnant and as

**24**

against each other cannot be recognized."  Allstate Insurance
Company v. Atlantic National Insurance Company, 202 F.Supp 85, 88
(S.D.W.Va. 1962).  Absent any other controlling provision, the
American Safety and Clarendon policies provide coverage on a pro
rata basis.

Alternatively, American Safety argues that the
Clarendon policy is primary because it is specific to auto
liability, whereas the American Safety policy is general in
nature.  (Pl. Reply to Def. Clarendon Resp. (Bartley) at 5.)  It
relies on the following language, taken from an opinion of the
West Virginia Supreme Court of Appeals, interpreting an excess
insurance clause:

> We cannot approve the construction . . . that
> the phrase "other similar insurance," . . .
> includes the general fire insurance policies
> which were in force on the building at the
> time of the injury to plaintiff's motor.  The
> fire policies were general; the policy in
> suit was specific.  It covered particular
items of property and for particular purposes; this denotes
marked dissimilarity, rather than similarity.  In our opinion,
the phrase "other similar insurance" refers to other policies
having the same specific coverage, and does not refer to those
having a general coverage.

(Pl. Reply to Clarendon Resp. (Bartley) at 5 quoting Kanawha Inv.
Co. V. Hartford Steam Boiler Inspection & Ins. Co., 149 S.E. 605,
605-606 (W.Va. 1929).)

25

The state supreme court's holding in that case depended entirely on the construction of the phrase "other similar insurance" contained in a Hartford policy covering specific electrical machinery.  In addition to that policy, a number of fire insurance policies also were available.  The court determined that, because the Hartford policy for the machinery addressed "particular items of property for a particular purpose," as opposed to the more general fire insurance coverage, the policies were sufficiently dissimilar so that the Hartford policy was primary.

Here, the court need not engage in consideration of whether the policies are similar, because neither policy's excess insurance clause limits its application to situations where "other similar insurance" is available.  Both the Clarendon business auto policy and the American Safety commercial general liability policy deem their coverages excess over "any other" available insurance.  American Safety having offered no other authority in support of its contention that specific coverage is primary in nature, it appears that American Safety has a duty to share in the defense and indemnification of Stollings together with Clarendon on a pro rata basis.  The court accordingly grants Stollings' motion for summary judgment on the Bartley claim,

grants Clarendon's cross-motion for summary judgment on the priority of coverages, and denies American Safety's motion for summary judgment (Murphy estate, Bartley, Stollings) insofar as it relates to the Bartley claim.

D.   **The Murphy Estate Claims**

_____Georgia Murphy filed, in her capacity as administratrix of the estate of Angela Murphy, a complaint in the Circuit Court of Mingo County, West Virginia.  (Pl. Murphy/Bartley/Stollings Mem. at 2.)  Angela Murphy died from injuries sustained when her car was struck on October 18, 2001, on State Route 65 near Belo, West Virginia, by a tractor-trailer owned and operated by Wade Adkins d/b/a G&T Transportation.  (Pl. Murphy / Bartley / Stollings Mem. at 2; Murphy Compl. ¶¶ 11-13.)  Murphy's complaint alleged that Stollings "caused, encouraged, and induced" Adkins to negligently operate his tractor-trailer while he hauled coal for Maxx Contractors, and that Maxx Contractors had been hired by Stollings to deliver mined coal.  (Murphy Compl. ¶¶ 5, 8-10.)  It stated that the truck had "been repeatedy and routinely overloaded . . . in furtherance of an intentional business design and plan created by and/or assented to" by Stollings and the other defendants.  (Murphy Compl. ¶¶ 8-9.)  Though not clear on

27

the face of the complaint, American Safety indicates the Murphy estate alleges that the consistent overloading caused inadequate brake linings and worn tire treads.  (Pl. Murphy / Bartley / Stollings Mem. at 2.)  American Safety says that Maxx Contractors was "contracted" to haul the coal (Pl. Murphy / Bartley / Stollings Mem. at 2).  Stollings adds that the truck was owned and operated by Wade Adkins, and that after Adkins picked up the coal at Stollings mining facilities and delivered it, Adkins' truck struck and killed Ms. Murphy.   (Def. Stollings' Murphy Mem. at 5).

American Safety declined to provide a defense or indemnity, denying that it was a primary insurer.  As with Bartley, Clarendon provided a defense under a reservation of rights.  The claim was settled subsequent to mediation in October 2005.  (Def. Stollings' Murphy Mem. at 5.)  American Safety contributed to the settlement on the basis that it was an excess insurer whose duties arose only after exhaustion of the Clarendon policy.  (Pl. Murphy / Bartley / Stollings Mem. at 3.)  Only the dispute between American Safety and Stollings awaits resolution here.[6]  As with the Bartley claim, American Safety states that it

---

[6]     Counsel for Clarendon represented at a status conference conducted February 24, 2006, that all issues between it and American Safety are resolved with respect to the Murphy

is "the excess insurer" and, further, that it met its duty of
indemnification ultimately by contributing to the Murphy
settlement.   (Pl. Murphy / Bartley / Stollings Mem. at 16.; Pl.
Murphy Resp. at 1-2.)  Stollings argues that American Safety
breached its duty to Stollings by failing to provide a defense or
indemnity.

        The court first notes that Exclusion g, the "auto
exclusion" discussed <u>supra</u> at page 13, would not appear to bar
coverage inasmuch as the truck was owned and operated by Adkins
who was hauling coal for Maxx Contractors, such that it was not a
vehicle owned, leased or operated by Stollings.  But,
interpreting remarkably similar policy provisions in a comparable
factual setting, the West Virginia Supreme Court of Appeals has
determined that an insured has a reasonable expectation of
coverage even when faced with an exclusion for "property damage
arising out of the ownership, maintenance, use or entrustment to
others of any . . . 'auto'", where, as here, the policy includes
a "products-completed operations hazard" provision.   <u>Marcum</u>
<u>Trucking Co., Inc. v. United States Fidelity and Guaranty Co.</u>,
438 S.E.2d 59, 61 (W.Va. 1993)(<u>per</u> <u>curiam</u>).

_____

claims.

                            29

The pertinent portion of the American Safety policy at issue is as follows:

24.   "Products-completed operations hazard":

a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and "arising from" "your product" or your work" except:

* * *

(2) Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

* * *

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

* * *

b.   Does not include "bodily injury" or "property Damage" arising out of:

(1) The transportation of property, unless the injury or damage "arising from" a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading" of that vehicle by any insured.

(Policy ASIC 98 00 04 00 Sec. V - Definitions 24).

Inasmuch as the coal allegedly overloaded onto Adkins' truck with the aid of Stollings had been delivered before the

30

Murphy accident, it can be argued that the injury to Murphy arose
from the "work" of Stollings that was completed when that part of
the work done at the mine or job site was put to its intended use
by Adkins' delivery of the load of coal.

More to the point, the circumstances here fit well
within the rationale of Marcum Trucking.  There the court found
ambiguity with respect to the insurance policy's products-
completed exclusion of an injury arising out of the
transportation of property unless that injury arose from a
condition in or on the vehicle that was created by the loading or
unloading of it.  The insured in Marcum Trucking, just as is
alleged here, had a role in the loading of the vehicle.  The
court construed the "unless" clause against the insurance company
and found that the "products-completed operations hazard"
provision provided coverage within the reasonable expectations of
the insured.  Marcum Trucking applies with equal vigor here.

American Safety nevertheless contends that there is no
justiciable controversy inasmuch as Clarendon provided a defense
to Stollings and because Stollings was "fully indemnified" by
both Clarendon and American Safety.  (Pl. Murphy Resp. at 5-6.)
But Stollings having had a reasonable expectation of coverage, it
appears that American Safety did indeed have a duty to Stollings

31

with respect to the Murphy estate claim, and there remains a
genuine question of material fact as to the fulfillment of that
duty and the extent and effect thereof.[7]


E.    Stollings' Breach of Contract and Bad Faith Claims


        Stollings, in its counterclaim, alleges breaches of
contract by American Safety.  Stollings also alleges violations
by American Safety of the West Virginia Unfair Trade Practices
Act and common law bad faith.  (Counterclaim, Count IV.)  By
order dated August 16, 2005, the court directed that the first
stage of discovery and briefing be conducted with regard to
coverage issues only.  Neither party has had an opportunity to
develop fully the evidence respecting the bad faith or other such
issues, including that of Stollings' claim of lost business
opportunities.  Accordingly, American Safety's motions for
summary judgment, insofar as each relates to those issues, are
denied without prejudice as premature.

---

        [7]     It is noted that American Safety aptly argues that
coverage of the punitive damages sought by Murphy estate would be
barred by Exclusion r relating to damages arising from
"intentionally or grossly negligent tortious conduct, including
'claims' for special, punitive or exemplary damages."

## F.   Medical Payments Coverage

The American Safety commercial general liability policy also contains "Coverage C" for "reasonable and necessary medical expenses . . . for 'bodily injury' caused by an accident" on premises owned or rented by the insured or occurring "because of" insured's operations.  (Policy ASIC 98 00 04 00, Sec. I, Coverage C 1 a.)

Coverage C, however, does not extend to injuries that are excluded from Coverage A.  (Policy ASIC 98 00 04 00, Sec. I, Coverage C 2 g.)  Inasmuch as the Nelson claims have been determined to have been excluded from Coverage A, it appears that medical payments coverage is not available for the Nelson claim.

As to the Bartley claim, a clear requirement under the medical payments coverage provisions is that "[t]he expenses are incurred and reported [to the insurer] within one year of the date of the accident. . ."   (Policy ASIC 98 00 04 00, Sec. I, Coverage C 1 a 2.)  There is no dispute that Stollings first became aware of Bartley's accident in December 2002 – more than one year after the August 2001 occurrence – and that American Safety was informed of the claim only after that.  (Stollings'

33

Bartley Mem. at 5.)  Inasmuch as the insurer was not informed of Bartley's expenses within one year, those expenses are not the responsibility of American Safety.

With respect to the Murphy estate claim, medical payments coverage is unavailable based on Exclusion f to Coverage C 2, which reads, "We will not pay any expenses for 'bodily injury' . . . included within the 'products-completed operations hazard'."  Inasmuch as coverage of the Murphy estate claim is based on the West Virginia Supreme Court's decision in Marcum Trucking that an insured would have a reasonable expectation of coverage under such a provision, medical payments coverage is excluded.

III.

It is accordingly ORDERED that:

1)    American Safety Indemnity Company's motion for summary judgment (Nelson) be, and it hereby is, denied except as to medical payment coverage;

2)    Stollings Trucking Company, Inc.'s motion for summary judgment on the Nelson claim with respect

34

to stop-gap coverage be, and it hereby is, granted;

3)  American Safety's motion for summary judgment (Murphy estate, Bartley, Stollings) be, and it hereby is, denied, except as to medical payment coverage;

4)  Stollings Trucking Company, Inc.'s motion for summary judgment on the Bartley claim regarding coverage issues presented by the counterclaim be, and it hereby is, granted;

5)  Stollings Trucking Company, Inc.'s motion for summary judgment on the Murphy estate claim regarding coverage issues presented by the counterclaim with respect to products-completed operations hazard be, and it hereby is, granted; and

6)  Intervenor Clarendon National Insurance Company's cross-motion for summary judgment on the issue of priority of coverages with respect to the Bartley claim be, and it hereby is, granted.

Lead counsel for all parties are directed to be present for a status and scheduling conference with the court in chambers at 2:30 p.m. on September 8, 2006.  In the interim the parties are directed not to file any motion or memorandum in this action prior to the conference without the permission of the court by order duly entered.

The Clerk is directed to forward a copy of this written opinion and order to all counsel of record.

DATED: August 28, 2006

John T. Copenhaver, Jr.
United States District Judge

36